UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------ x
                                                     :

**UNITED STATES OF AMERICA**       :

                                                     :

                   **- v -**                    :              17 Cr. 773 (JGK)

                                                   :

**GREGORY FERRER**,                    :

                                                   :

                            Defendant.    :
------------------------------------------------------ x


## REPLY TO THE GOVERNMENT'S SENTENCING MEMORANDUM; SUPPLEMENTAL BRIEFING IN RESPONSE TO THE COURT'S ORDER


                                             DAVID PATTON, ESQ.
                                             Federal Defenders of New York, Inc.
                                             Attorney for Defendant
                                             GREGORY FERRER
                                             52 Duane Street - 10th Floor
                                             New York, New York 10007
                                             Tel.: (212) 417-8737

                                             MARTIN S. COHEN
                                             *Of Counsel*


TO:    GEOFFREY BERMAN
         United States Attorney
         Southern District of New York
         One. St. Andrew's Plaza
         New York, New York 10007
         Attn:   ADAM HOBSON, ESQ.
                     Assistant United States Attorney

Federal Defenders
OF NEW YORK, INC.

Southern District
52 Duane Street-10th Floor, New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

David E. Patton
*Executive Director*

Southern District of New York
Jennifer L. Brown
Attorney-in-Charge

October 16, 2018

*By Hand and ECF*

Honorable John G. Koeltl
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

Re:  *United States v. Gregory Ferrer*, 17 Cr. 773 (JGK)

Dear Judge Koeltl:

      I write in reply to the government's sentencing submission of Oct. 11, 2018 (Dkt. No. 19); in response to this Court's order of Oct. 15, 2018 (Dkt. No. 20), and in further support of the objection that Mr. Ferrer has no prior "controlled substances offenses" under U.S.S.G. §§ 2K2.1(a)(2) and 4B1.2(b).

**I.     Reply to the Government's Sentencing Submission**

      The government does not dispute the principal premises of Mr. Ferrer's argument, namely: (i) New York's definition of "narcotic drug" encompasses substances not currently scheduled under federal law; (ii) there is a realistic probability that New York would prosecute conduct involving these substances under N.Y. Penal Law §§ 220.16(1), 220.39(1), and 220.44(2); and (iii) the "narcotic drug" element of these offenses is indivisible. Instead, the government makes two responses. First, the government contends that Mr. Ferrer's "argument is foreclosed by controlling Second Circuit law." Gov't Sent'g Mem. 2. Second, the government observes that Mr. Ferrer's "argument that the New York definition of 'narcotic drug' is broader than the federal definition appears to depend on the current versions of the relevant schedules rather than the versions in place at the time of [his] convictions." *Id.*

Re:     *United States v. Gregory Ferrer*, 17 Cr. 773 (JGK)

> **A. The relevant time for assessing the New York state schedules is the date of the prior conviction, but the relevant time for assessing the federal schedules is the date of sentencing.**

To take the government's second response first, the government is half-right: Mr. Ferrer's argument depends on a comparison between the New York state schedules in effect at the time of his convictions and the federal schedules in effect today. Moreover, the overbreadth at issue here first arose in 2015, after Mr. Ferrer's state convictions, but before his federal offense conduct. *See* PSR ¶¶ 6–10; Def. Supp. Sent'g Mem. (Dkt. No. 18), at 8 (citing Schedules of Controlled Substances: Removal of Naloxegol from Control, 80 Fed. Reg. 3468–01 (Jan. 23, 2015)).[1] Contrary to the government's suggestion, however, Mr. Ferrer's is the appropriate analytical framework. This Court considers the New York state schedules in effect at the time of Mr. Ferrer's conviction to determine what he was actually convicted of doing. *See, e.g.*, *United States v. Townsend*, 897 F.3d 66, 74 (2d Cir. 2018) (consulting "the New York state drug schedule" in effect "[a]t the time of Townsend's conviction"). But the relevant time for assessing the federal schedules is today, the time of Mr. Ferrer's federal sentencing. Several factors dictate that approach.

Most important, 18 U.S.C. § 3553(a)(4)(A)(ii) directs this Court to apply the version of the Guidelines "in effect on the date the defendant is sentenced." *See also* U.S.S.G. § 1B1.11(a) (same). Under *Townsend*, the term "controlled substance" in § 4B1.2(b) of the current Guidelines Manual "refers exclusively" to substances controlled by the federal Controlled Substances Act ("CSA"). 897 F.3d at 68. Put another way, *Townsend*'s holding defines "controlled substance" to match the federal statutory definition at 21 U.S.C. § 802(6). Logically, the current version of the Guidelines Manual must incorporate the current version of the CSA. Numerous provisions of the Guidelines incorporate federal statutory definitions, including to describe predicate offenses. *See, e.g.*, §§ 4B1.2(a)(2); 4B1.5 cmt. n.3(A)(ii). It would wreak havoc on the uniform application of the Guidelines were each to be defined with reference to the time of every individual defendant's prior convictions.

This time-of-sentencing rule reflects the general principle that the federal effect of a prior conviction under the Guidelines turns on current law, not the law in effect at the time of the prior conviction. For example, the Second Circuit has affirmed a 16-level enhancement for illegal re-entry following an aggravated felony conviction, under U.S.S.G. § 2L1.2(b)(2) & cmt. n.7 (1991 ed.), even though the conviction (for New York

---

[1] The removal of the geometric isomers of 3-methylfentanyl and naldemedine occurred in 2016 and 2017, respectively.

first-degree robbery, in 1988) was not, when sustained, an aggravated felony under the statutory definition in the Immigration and Nationality Act ("INA") or the Guidelines. *United States v. Westcott*, 159 F.3d 107, 114–17 (2d Cir. 1998). *See United States v. Westcott*, 986 F. Supp. 186, 193 (S.D.N.Y. 1997) (Sotomayor, J.) (opinion below; referring to "the ordinary operation of the guidelines," under which "past acts are routinely used to enhance sentences for other crimes, even to the extent that those acts, at the time they were committed, did not carry any such implications").[2] By the same token, a prior conviction for, say, burglary of a dwelling in 2008—which would have qualified as a "crime of violence" under the then-applicable Guidelines, *see* § 4B1.2(a)(2) (2008 ed.)—would not so qualify today because that offense has been deleted from the current version of the Guidelines, *see* § 4B1.2(a)(2) (2016 ed.). Either way, the offense's current status controls.

In the context of controlled substances, looking to the time of the federal sentencing respects the DEA's judgment that particular substances no longer merit federal criminal regulation. For example, the DEA removed naloxegol and naldemedine from the CSA after determining that neither met the statutory criteria for federal control. *See* Schedule of Controlled Substances: Removal of Naldemedine from Control, 82 Fed. Reg. 45436–01 (Sept. 29, 2017) ("Based on the consideration of all comments, the scientific and medical evaluation and accompanying recommendation of the HHS, and based on the DEA's consideration of its own eight-factor analysis, the Administrator finds that these facts and all relevant data demonstrate that naldemedine does not meet the requirements for inclusion in any schedule, and will be removed from control under the CSA."), *available at* 2017 WL 4311001; Schedules of Controlled Substances: Removal of Naloxegol from Control, 80 Fed. Reg. 3468–01 (Jan. 23, 2015) (same), *available at* 2015 WL 273535. It would be bizarre if Mr. Ferrer's federal sentence were enhanced on the basis of "controlled substances" that the federal government itself no longer deems it proper to control.

The government's time-of-state-conviction rule would yield anomalous results at odds with the Guidelines' basic design. For example, imagine two federal defendants: Defendant A was convicted under § 220.39(1) on January 22, 2015, when the state and federal schedules were coterminous; Defendant B was convicted under § 220.39(1) on January 24, 2015, when the federal schedule had narrowed. Note that § 220.39(1) remained unchanged, so A and B were convicted of the same state-law violation. Now

---

[2] This result presented no Ex Post Facto problem because the defendant had engaged in new offense conduct (illegally re-entering) after the definition of "aggravated felony" in the INA and the Guidelines had been amended to encompass his prior New York robbery offense.

imagine that A and B possess the same firearm on the same day in 2018. Under the government's approach, A's base offense level is 20 but B's is 14. If both fall in criminal history category I, A's Guidelines range is 33–41 months but B's is 15–21. That is, A and B have identical criminal records and have engaged in identical offense conduct, but A's Guidelines range is double B's. That result is impossible to square with "one of the major purposes of the Guidelines," namely, "to eliminate unjustified disparities in sentences among similarly situated defendants." *United States v. Stultz*, 356 F.3d 261, 266 (2d Cir. 2004). *See also* U.S.S.G. ch. 1, pt. A, § 3 (same).

Indeed, the government's position generates the further absurdity that the term "controlled substance offense" will have different meanings—because it incorporates different controlled substances—as to a single federal defendant *in the same federal case*. In the example just given, if Defendant A had sustained both prior § 220.39(1) convictions, the government's position would mean that one counted and the other did not because the meaning of "controlled substance offense" was variable. The use of inconsistent definitions of "controlled substance offense" for the same defendant in the same sentencing proceeding would violate the principle behind the "one-book rule," under which "[t]he Guidelines Manual in effect on a particular date shall be applied in its entirety." § 1B1.11(b)(2).

Finally, the applicable interpretive canons require this Court to resolve any ambiguity in Mr. Ferrer's favor. *See* Def. Supp. Sent'g Mem. 4. The rule of lenity applies to the Guidelines. *United States v. McGee*, 553 F.3d 225, 229 (2d Cir. 2009). And § 4B1.2(b)'s definition of "controlled substance offense" "is to be interpreted strictly." *United States v. Liranzo*, 944 F.2d 73, 79 (2d Cir. 1991).

### B.     Second Circuit precedent does not foreclose Mr. Ferrer's claim.

The proposition that this Court must apply the current federal schedules largely disposes of the government's primary response, its reliance on precedent. Three of the five cases that the government cites – *Pascual v. Holder*, 707 F.3d 403 (2d Cir. 2013); *United States v. King*, 325 F.3d 110 (2d Cir. 2003); *United States v. Ramirez*, 344 F.3d 247 (2d Cir. 2003) – were decided before the overbreadth first arose in 2015. The amendment of the federal schedules constitutes an intervening "change in law" sufficient to render these cases non-binding. *See, e.g.*, *United States v. Moreno*, 2000 WL 1843232, at *5 (S.D.N.Y. Dec. 14, 2000) (noting that "district courts and other inferior courts are bound by decisions of the Court of Appeals in the appropriate circuit unless overruled by [a] ... change in law," and departing from Circuit precedent accordingly).

Neither of the two remaining cases controls this Court. *Espinal v. Lynch*, 665 F. App'x 65 (2d Cir. 2016), is non-precedential, 2d Cir. R. 32.1.1(a), and may be disregarded on that basis. *See, e.g.*, *No Hero Enterprises B.V. v. Loretta Howard Gallery, Inc.*, 2014 WL 10936545, at *1 (S.D.N.Y. May 28, 2014) (party "is free to rely extensively on authority with no precedential effect," but "should not expect the Court to do the same"). The observation in *Heredia v. Sessions* that § 220.16(1) is a drug trafficking aggravated felony was dictum that served only to explain the case's procedural history. 865 F.3d 60, 62 (2d Cir. 2017). By the time *Heredia* was decided, the noncitizen's § 220.16(1) conviction had been vacated in state court, *see id.* at 63, 66, and neither of the issues presented in his petition for review turned on the classification of § 220.16(1) as an aggravated felony.

Finally, none of the government's cases involved the challenge that Mr. Ferrer now mounts to the overbreadth of New York's definition of "narcotic drug," so none had occasion to decide the issue. "'Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents.'" *United States v. McCarthy*, 271 F.3d 387, 399 (2d Cir. 2001) (quoting *Webster v. Fall*, 266 U.S. 507, 511 (1925)). No precedent forecloses Mr. Ferrer's claim.

## II.     Response to This Court's Order

This Court directed the parties to submit supplemental briefing regarding (i) whether §§ 220.16, 220.39, and 220.44 are divisible; and (ii) whether the 2008 version of N.Y. Pub. Health Law § 3306 is broader than the 2008 version of 21 C.F.R. § 1308.12 because the latter excludes "thebaine-derived butorphanol" but the former does not.

A.     With respect to divisibility, as set forth in Mr. Ferrer's supplemental sentencing submission (at 8–10), the fundamental point is that the "narcotic drug" element of each of these offenses is indivisible. To elaborate: §§ 220.16, 220.39, and 220.44 are divisible among their separate subsections. *See, e.g.*, *United States v. Beardsley*, 691 F.3d 252, 275 (2d Cir. 2012) (statute is divisible if "divided into disjunctive subsections"). That is, a court may apply the modified categorical approach and consult documents noticeable under *Shepard v. United States*, 544 U.S. 13 (2005), to ascertain which subsection formed the basis of a defendant's conviction. For example, a court could look to *Shepard* documents to determine that a defendant was convicted under § 220.16(1) ("possesses ... a narcotic drug with intent to sell") as opposed to § 220.16(8) ("possesses ... a stimulant and said stimulant weighs five grams or more"). Likewise a court could consult *Shepard* documents to determine whether a defendant was

convicted under § 220.39(1) ("sells ... a narcotic drug") or § 220.39(5) ("sells ... a hallucinogen and the hallucinogen weighs twenty-five milligrams or more").

The divisibility analysis for § 220.44 is somewhat more complicated. Under *Beardsley*, as with §§ 220.16 and 220.39, a court could conduct a modified categorical analysis to determine the subsection under which a defendant was convicted, *i.e.*, § 220.44(2) rather than § 220.44(4). Having determined that a defendant was convicted under § 220.44(2) ("sells ... a controlled substance in violation of any one of subdivisions one through eight of section 220.39"), it is unclear whether a court could apply the modified approach a second time, to determine which of the "subdivisions" of §§ 220.39(1) to (8) was involved. My research has not located any decision involving § 220.44 (or the similarly-structured § 220.34) indicating whether a petit jury would be required to agree, unanimously, on the particular "subdivision" violated to convict.

For purposes of this case, however, the second-tier divisibility of § 220.44(2) is immaterial. If the statute were divisible, Mr. Ferrer assumes that *Shepard* documents would show § 220.39(1) to be the basis for his conviction. *See* Def. Supp. Sent'g Mem. 3 n.2. If the statute were indivisible, then this Court would be required to presume § 220.39(1) to be the basis for his conviction. *See Mellouli v. Lynch*, 135 S. Ct. 1980, 1985 (2015). Either way, because the "narcotic drug" element of § 220.39(1) is both overbroad and indivisible, a § 220.44(2) conviction "cannot qualify as a predicate offense" because "a defendant might be convicted of violating" that provision "for conduct that is not prohibited by the CSA." *Townsend*, 897 F.3d at 74.

That is the critical point: once a court has determined that a defendant's conviction arose under §§ 220.16(1), 220.39(1), or 220.44(2)—that is, involved a "narcotic drug"—the modified categorical approach stops. A court *cannot* apply the modified approach to drill down further, into the cross-referenced New York narcotic drug schedules, to determine which "narcotic drug" was involved. *Harbin v. Sessions*, 860 F.3d 58 (2d Cir. 2017), all but held as much. Discussing New York Appellate Division opinions concerning § 220.16(1), *Harbin* explained: "Several opinions state that different narcotic drugs do not create separate crimes under this statute, and that jurors need not agree as to the particular narcotic drug in question." 860 F.3d at 67. Because New York law does not require jury unanimity as to the "particular narcotic drug" possessed under § 220.16(1), the identity of the "narcotic drug" is not an element. *See Mathis v. United States*, 136 S. Ct. 2243, 2248 (2016) ("'Elements' ... are what a jury must find beyond a reasonable doubt to convict the defendant."). And because the identity of the "narcotic drug" is not an element—just a "factual means"—the modified approach cannot be employed to ascertain what "narcotic drug" was involved. *See id.* at 2256 (if "enumerated alternatives" in statute "are means, the court has no call to decide

which of the statutory alternatives was at issue in the earlier prosecution"). *Harbin* establishes that § 220.16(1)'s "narcotic drug" element is indivisible. *Harbin*'s reasoning applies with equal force to the materially-identical § 220.39(1), and to § 220.44(2), which incorporates § 220.39(1).

B.   With respect to "thebaine-derived butorphanol," Mr. Ferrer acknowledges that this difference does not result in a categorical mismatch because butorphanol was then (and is now) controlled under schedule IV of the federal schedules. *See* 21 C.F.R. § 1308.14(f)(2) (2008); *id.* § 1308.14(g)(2) (2018). Butorphanol therefore falls within *Townsend*'s definition of "controlled substance" because it is regulated under the CSA.

For the foregoing reasons, this Court should rule that Mr. Ferrer has no prior "controlled substance offenses" and that his Guidelines range is 30–37 months.

Respectfully submitted,

/s/
Martin S. Cohen
Daniel Habib
Ass't Federal Defenders
Tel.: (212) 417-8737

cc:   Adam Hobson, Esq., by ECF and by hand
      Mr. Gregory Ferrer, MCC Register Number 79753-054